Craig Smith, Esq.
CSBN #293020
COULTER HARSH LAW
403 Hill Street
Reno, Nevada 89501
Phone: 775 324-3380
Fax 775 324-3381
*Attorney For Plaintiff*

UNITED STATES DISTRICT COURT
DISTRICT OF CALIFORNIA

BRIGITTE MUELLER,

                Case No.:

        Plaintiff,

vs.

THE LINCOLN NATIONAL LIFE
INSURANCE COMPANY

        Defendant.
_____/

**COMPLAINT FOR DECLARATORY RELIEF AND BREACH OF FIDUCIARY DUTIES
UNDER 29 U.S.C. § 1132(a)(2), SEEKING RECOVERY OF BENEFITS PURSUANT TO 29
U.S.C. § 1132(a)(1)(B)**

    Plaintiff seeks a declaration that the Accidental Death and Dismemberment benefit, purchased by

the employer of Plaintiff's husband is payable where husband, who was a passenger in an aircraft, being

used by or on behalf of husband's employer crashed causing husband's death. Defendant, Lincoln acted

with a conflict of interest, breached its fiduciary duties, and denied Plaintiff's claim for accidental death

insurance benefits. Plaintiff, Brigitte Mueller by and through her counsel, therefore, alleges and

complains as follows.

**A. FIRST CLAIM FOR RELIEF - DECLARATORY RELIEF**

1. Plaintiff incorporates all paragraphs set forth in the following claim for relief as though set forth

    in full in this claim for relief.

2. Pursuant to Federal Rule 57 and 28 U.S. Code § 2202 Plaintiff seeks a declaration from this court that the policy of insurance described herein provides Accidental Death and Dismemberment benefits and that those benefits are payable to Plaintiff based on pertinent facts.

**PARTIES**

3. At All relevant times Plaintiff, Brigitte Mueller ("Mueller") was and is a resident of the State of California.

4. The Lincoln National Life Insurance Company ("Lincoln") is an insurance company.

**JURISDICTION**

5. Lincoln is licensed to conduct business in the State of California.

6. Lincoln sold a policy of insurance, a Group Life Plan ("Plan", "The plan" and "Subject Plan"), to Raley's, a California Corporation.

7. The subject Plan was purchased by Raley's from Lincoln.

8. The purchase of the subject Plan occurred in California.

9. Lincoln has voluntarily availed itself to the jurisdiction of this court by conducting business in the State of California.

10. This Court has personal jurisdiction over Lincoln because Lincoln has minimum contacts with the State of California.

11. The claims asserted by Mueller are governed by the Employee Retirement Security Act of 1974 (ERISA), a body of federal law.

12. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331, the issues in this case present questions arising under federal law.

**VENUE**

13. Raley's principal place of business at all relevant times has been Yolo County, California.

14. Lincoln sold the subject policy of insurance to Raley's in Yolo County, California.

15. Raley's paid the premium for the subject policy of insurance to Lincoln from Yolo County, California.

16. Lincoln has conducted business within the geographic district of this court, The Eastern District of California.

17. Kenneth Mueller died in Sacramento County, California.

18. At All relevant times Plaintiff, Brigitte Mueller ("Mueller") was and is a resident of El Dorado County, California.

19. A substantial part of the events or omissions giving rise to the claims set forth herein occurred in the geographic bounds of this Court.

20. Venue is proper in this Court pursuant to 28 U.S.C. §1391 because the events that give rise to these claims occurred in this district.

**STANDING**

21. Mueller is a beneficiary of the Accidental Death and Dismemberment ("ADD") benefit available under the Plan, which is the subject of this action.

22. Mueller has a colorable claim to the benefits sought in this action.

23. Mueller has standing to bring this action pursuant to 29 U.S.C. §1132.

**MUELLER HAS EXHAUSTED APPELLATE RIGHTS WITH LINCOLN**

24. To the extent Mueller is required to exhaust her remedies by appealing or taking other action with Lincoln, those efforts have been exhausted.

25. Benefits payable under the ERISA Plan have been denied and the claims are ripe for adjudication. (*Grosz-Salomon v. Paul Revere Life Ins. Co.*, 237 F.3d 1154, 1159 (9th Cir. 2001).)

26. Mueller has satisfied all conditions under the Plan to receive the benefits requested.

**KENNETH MUELLER WAS AN EMPLOYEE AND AN OFFICER OF RALEY'S**

27. Kenneth Mueller was an Officer of Raley's, for some time before and at the time of his death.

28. Kenneth Mueller was the Senior Vice President and Chief Financial Officer of Raley's, for some time before and at the time of his death.

**BRIGETTE MUELLER, WIFE, MOTHER AND BENEFICIARY**

29. At relevant times Mueller was married to Kenneth Mueller.

30. At all relevant times Plaintiff, Brigitte Mueller and Kenneth Mueller lived together as husband and wife.

31. Kenneth Mueller and Brigitte Mueller had two children during their marriage.

**KENNETH MUELLER DIED WHILE A PASSENGER IN AIRCRAFT**

32. Kenneth Mueller was a passenger in a twin-engine aircraft that crashed on September 4, 2022, in Sacramento County, California.

33. Kenneth Mueller died in the crash of the twin-engine aircraft on September 4, 2022.

34. The twin-engine aircraft Kenneth Mueller was occupying at the time of his death was a Beechcraft 58 Baron, Serial Number TH-1458, Tail Number N142DR. (The subject aircraft or "Baron").

35. The Baron was not owned by Kenneth Mueller or Raley's.

36. The Baron is commonly known as a six-passenger aircraft.

( https://beechcraft.txtav.com/en/baron-g58#interior )

37. Richard Conte was also a passenger in the subject aircraft on September 4, 2022.

38. Richard Conte also died in the crash on September 4, 2022.

39. The aircraft crash on September 4, 2022 was an accident and was not intended.

40. Kenneth Mueller died in the accidental aircraft crash and not from any other cause.

41. On or about July 21, 2022, Kenneth Mueller received a license to pilot a single-engine aircraft.

42. Kenneth Mueller, as part of his employment with Raleys, traveled to various locations in which Raley's had business interests, both in and out of the State of California.

43. Kenneth Mueller obtained his pilot's license to assist business operations with Raley's.

44. By letter from Mueller dated January 17, 2023, Lincoln was aware Kenneth Mueller completed private pilot training on July 21, 2022.

45. Kenneth Mueller had not been licensed to pilot an aircraft of any kind before completing his private pilot's training on July 21, 2022.

46. At no time before September 4, 2022 had Kenneth Mueller ever been licensed to pilot a twin-engine aircraft.

47. At no time before September 4, 2022 had Kenneth Mueller been qualified to pilot a twin-engine aircraft.

48. Kenneth Mueller was not the pilot of the Baron at the time it crashed.

49. Before September 4, 2022, Richard Conte had been licensed to pilot numerous types of aircraft including twin-engine aircraft.

50. Richard Conte was qualified and licensed to fly a twin-engine aircraft on and before September 4, 2022.

51. Richard Conte was qualified to fly the Baron that crashed on September 4, 2022.

52. Richard Conte was the pilot of the Baron at the time it crashed on September 4, 2022.

## THE AIRCRAFT WAS BEING USED BY OR ON BEHALF OF RALEY'S

53. The cost of using or leasing the Baron on September 4, 2022 would have been charged to Raley's if the aircraft had not crashed.

54. The Baron was being used, aka leased, by or on behalf of Raley's when it crashed.

**RALEY'S PROVIDED GROUP LIFE INSURANCE TO ITS EMPLOYEES**

55. At relevant times, Raley's provided life insurance benefits to its employees via the Plan.

56. The benefits provided by the Plan included Life Insurance and Accidental Death and Dismemberment Insurance.

57. Mueller received a copy of the Plan from Lincoln.

58. After receiving a copy of the Plan from Lincoln, Mueller had that Plan "Bates Stamped" as ADD0001 through ADD0063 and provided Lincoln with a copy of the Bates Stamped Plan.

59. The Group Life plan is Policy No. SA3-890-LF0724-0l. (ADD0052)

60. The subject policy of insurance is commonly referred to as a Group Life Plan ("Plan"). (ADD0052)

61. The name of the insurance Raley's purchased from Lincoln is referred to as "Raley's Health and Welfare Plan" (ADD0052).

62. The "Effective Date" of the Plan was April 1, 2022. (ADD0005)

63. The Plan was in full force and effect at the time of Mr. Mueller's death on September 4, 2022.

64. The Plan was drafted by Lincoln.

65. Raley's is the Plan "Sponsor." (ADD00019)

66. Decisions whether to pay benefits are made by Lincoln as the "Insurer Administration." (ADD0052)

67. Kenneth Mueller was a full-time active employee of Raley's at the time of his death.

68. Kenneth Mueller was an "Employee" as defined by the Plan. (ADD0016)

69. Kenneth Mueller worked for Raley's at least 120 hours per month immediately before his death. (ADD0007)

70. Kenneth Mueller was a "Class 10" covered employee at the time of his death as defined by the Plan. (ADD0007)

71. Kenneth Mueller was a "Covered Employee" as defined by the Plan. (ADD0015)

72. Accidental Death and Dismemberment ("ADD") benefits are provided under the terms of the Plan. (ADD00001-63)

73. Kenneth Mueller was a beneficiary of the benefits available under the Plan.

74. Mueller was a "Dependent" as defined by the Plan. (ADD 0015)

75. Mueller was a "Dependent" spouse of her husband, Kenneth Mueller. (ADD0015)

76. The Plan identifies various benefits that are payable when a loss occurs, and requisite facts exist. (ADD00001-63)

77. As a surviving dependent spouse, Mueller is entitled to certain benefits as set out in the Plan, if specific facts exist. (ADD0037)

78. The Plan sets out a Schedule of Benefits in Section 1.

79. Section 1 of the Plan provides that if an employee dies from an accidental death the amount payable is equal to the Basic Life Insurance Amount. (ADD0009)

80. The Plan states:

   Accidental Death and Dismemberment benefits are payable when you suffer a loss solely as the result of accidental Injury that occurs while covered. The loss must occur within 365 days after the date of the accident. The benefit payable is called the Full Amount. It is shown in the Schedule of Benefits. (ADD0032)

81. Kenneth Mueller died by accidental death.

82. The Plan defines the term "Injury."

   **"Injury"** means bodily impairment resulting directly from an accident and independently of all other causes. (ADD0018)

83. Kenneth Mueller died on September 4, 2022 as the result of an injury, as defined by the Plan.

84. Pursuant to the Plan's Schedule of Benefits, the benefit payable for Loss of Life is the "Full Amount." (ADD0032)

85. The benefit amount payable for the accidental death of Kenneth Mueller is $900,000 if the policy requirements are satisfied. (ADD0010)

86. The Plan provides definitions in Section 2.

87. "Passenger" is not defined in Section 2 of the Plan.

88. The Plan also provides definitions in Section 4 that expressly apply to specific additional benefits.

89. Section 4 of the Plan identifies available insurance benefits. (ADD0026)

90. In Section 4 of the Plan, Accidental Death and Dismemberment Insurance Benefits are stated. (ADD0032)

91. Section 4 defines "passenger" as used regarding specific "Additional" benefits.

92. Section 4 of the Plan includes "EMPLOYEE ACCIDENTAL DEATH AND DISMEMBERMENT INSURANCE Benefits." (ADD0032)

**MUELLER REQUESTED LINCOLN PAY THE ACCIDENTAL DEATH BENEFIT**

93. On September 30, 2022, Lincoln wrote to Ms. Muller in response to her claim for ADD benefits and in part stated:

> "Please find enclosed the Life Benefit payment of $900,000. This amount represents partial settlement of the Group Life Insurance claim referenced above.
> As we are now aware that the manner of death has been ruled an accident, we will proceed with our review of the Accidental Death and Dismemberment (hereinafter "AD&D") claim submitted by (ER Name). In order to complete our investigation of the AD&D Benefits, please submit a copy of the following reports:
> Policy Report with applicable legend
> Autopsy/Coroner Report
> Toxicology Report."

94. Before receiving Lincoln's November 5, 2022 letter, Mueller responded to Lincoln's September 30, 2022 letter and provided information requested by Lincoln so it might pay the accidental death benefit.

95. Mueller has requested Lincoln pay the ADD benefit as a result of Kenneth Mueller's accidental death.

96. Lincoln has refused to pay the ADD benefit to Mueller.

**LINCOLN DENIED PAYMENT OF THE ADD BENEFIT, NOVEMBER 5, 2022**

97. In Section 4 of the Plan, benefits are described.

98. Section 4 of the Plan also describes "Additional Benefits."

99. Two of the Additional Insurance Benefits set out in Section 4 of the Plan are the: Disappearance Benefit, payable when the Covered Person is a fare-paying Passenger and is not found within 365 days after disappearance, sinking or wrecking of a public conveyance; and the Common Carrier Benefit, payable when the Covered Person dies as a result of an accident while riding as a fare-paying Passenger on a public conveyance; … (ADD0034)

100. The "Additional Benefits," identified above related to loss by "Common Carrier" and "Disappearance," set forth in Section 4 of the Plan, expressly define the word "passenger" to limit who can be a "passenger" regarding the specific benefit. (ADD0034)

101. Regarding the "Disappearance Benefit," in Section 4 of the Plan, Lincoln expressly defined the word "passenger":

> **With respect to *this* provision, *"Passenger" is defined as an individual other than a pilot, operator or crew member* who is riding in or on, boarding, or dismounting from a public conveyance. (ADD0034, emphasis added)**

102.    Regarding the "Common Carrier" benefit, in Section 4 of the Plan, Lincoln again

expressly defined the word "passenger":

> **With respect to *this* provision, *"Passenger" is defined as an individual other than a pilot, operator or crew member* who is riding in or on, boarding, or dismounting from a public conveyance." (ADD0034, emphasis added)

103.    In Section 5 of the Plan, Lincoln sets out exclusions that apply to claims for payment of

Accidental Death and Dismemberment benefits. (ADD0043-44)

104.    On November 5, 2022 Lincoln denied Mueller's claim for the ADD benefit and identified

exclusions from Section 5 of the Plan.

105.    On November 5, 2022, Lincoln denied Mueller's claim for accidental death benefits
stating:

"Based on the above exclusions and the review of Mr. Kenneth Mueller's Certificate of Death, Medical Exam report, as well as the Accident report it has been determined the Accidental Death benefit is not payable. The Certificate of Death indicates that the cause of death is multiple blunt force injuries. The Medical and National Transportation Safety Board Aviation Accident Preliminary Report confirmed that the injuries were sustained from an airplane crash in which Mr. Mueller was the student pilot.

Therefore, we have determined that no Accidental death benefits are payable as outlined in the #10 exclusion of Policy as noted above."

106.    The phrase or term "blunt force injuries" is not included anywhere in the Plan.

107.    On November 5, 2022, Lincoln denied Mueller's claim for ADD benefits asserting that

the benefit was not payable because Kenneth Mueller was a pilot, student pilot with his

death being caused by "multiple blunt force injuries."

108.    Lincoln's assertion on November 5, 2022, was made in bad faith when it asserted the

ADD benefit was not payable because Kenneth Mueller had been a pilot or student pilot

with his death being caused by blunt force injuries.

109.    Lincoln's November 5, 2022 denial letter referenced Section 5, Exclusion 10 which

states:

**ACCIDENTAL DEATH AND DISMEMBERMENT EXCLUSIONS**
No benefits are payable for any loss that is contributed to or caused by:
10. boarding, leaving or being in or on any kind of aircraft. However, this exclusion will not apply if the Covered Person is a fare paying passenger on a commercial aircraft or traveling as a passenger in any aircraft that is owned or leased by or on behalf of the Sponsor.

110.    Lincoln's November 5, 2022 denial letter stated it had completed its initial investigation into Mrs. Mueller's claim for ADD benefits and concluded that because Mr. Mueller suffered "blunt force injuries" while acting as a "student pilot" the ADD benefit was not payable.

111.    The phrase or term "student pilot" is not included anywhere in the Plan.

112.    The word or term "passenger," as used in exclusion 10 was not defined.

113.    If Lincoln had intended the word "passenger" to have the same restrictive definition in Section 5, Exclusion 10 it failed to do so.

114.    The word or term "passenger" as used in Section 5, Exclusion 10 is broad enough to encompass a person who is a pilot, operator, or crew member.

115.    Regarding the ADD benefit claimed by Mueller, Lincoln did not define the word or term "passenger" to be ***"an individual other than a pilot, operator or crew member"*** as Lincoln had done in defining who may recover additional benefits where a loss occurs by common carrier or by disappearance, as stated in Section 4 of the Plan.

116.    Because the word or term "passenger," when interpreted broadly, may include a pilot, operator or crewmember, Lincoln created and included a restrictive definition to exclude a "pilot, operator, or crew member" from being a "passenger" regarding claims for select additional benefits described in the Plan as the Common Carrier and / or Disappearance benefit set out in Section 4 of the Plan.

117.    Lincoln knew the Plan did not define "passenger" in Section 5, Exclusion 10 when it denied Mueller's claim for ADD benefits.

118.    If Lincoln had wanted to exclude a pilot, operator, or crew member from being a "passenger" in Section 5, Exclusion 10, it would have done so.

119.    The Plan did not define the word or term "lease" as used in Exclusion 10, Section 5 of the Plan.

120.    The phrase "leased by or on behalf of" as used in Exclusion 10, Section 5 of the Plan, when applied to the context of aircraft reasonably may reasonably include an aircraft "*used* by or on behalf of" Raley's.

121.    The Plan did not define the phrase "by or on behalf" as used in Exclusion 10, Section 5 of the Plan.

122.    Other than as stated in the additional benefits portion of Section 4, "Common Carrier" and "Disappearance," the Plan does not exclude accidental death benefits when a person dies while being a "pilot," or "student pilot."

123.    The Plan does not exclude payment of a benefit when a person dies as a "student pilot."

124.    Lincoln knew before or upon reading Mueller's December 22, 2022 appeal that Kenneth Mueller could not lawfully be a pilot of the twin-engine Baron because he was only licensed and certified to fly a single-engine aircraft.

125.    When denying Muller's claim for ADD benefits on November 5, 2022, Lincoln did not deny Kenneth Mueller was a passenger on the Baron or that the Baron was being leased by or on behalf of Raley's.

126.    Lincoln concluded in its November 5, 2022 letter that Kenneth Mueller's death was accidental.

127.    In Mueller's December 22, 2022 appeal she again provided Lincoln with the information Lincoln had requested on September 5, 2022.

128.    On December 22, 2022, Mueller timely appealed Lincoln's denial dated November 5, 2022.

129.  Lincoln knew on or before Mueller's December 22, 2022 appeal that Kenneth Mueller was an Officer of Raley's.

130.  Included in Mueller's December 22, 2022 appeal was the affidavit of Teresa Conte aka Teri Conte.

131.  From reading Teresa Conte aka Teri Conte's affidavit Lincoln could reasonably conclude that the Baron was being leased by or on behalf of Raley's at the time of Kenneth Mueller's death.

132.  From reading Teresa Conte aka Teri Conte's affidavit Lincoln could reasonably conclude that the lease or use of the Baron was being sponsored or paid for by Raley's.

133.  Mueller provided supplemental information to Lincoln on January 17, 2023 showing that Kenneth Mueller completed the private pilot training on July 21, 2022.

134.  Mueller provided supplemental information to Lincoln on February 14, 2023 stating that Kenneth Mueller's flight training had been paid for by Raley's.

## LINCOLN'S SECOND DENIAL OF THE ADD BENEFIT, FEBRUARY 15, 2023

135.  Mueller's appeal of Lincoln's November 5, 2022 denial of benefits was reviewed by one or more employees of Lincoln.

136.  Lincoln's decision to deny Mueller's December 22, 2022 appeal was decided on by one or more employees of Lincoln.

137.  On February 15, 2023 Lincoln again denied payment of the ADD benefit.

138.  In the February 15, 2023 denial letter Lincoln stated: "A news article from Sacramento Bee indicated the flight was not on company business per Raley's spokeswomen Chelsea Minor."

139.  Nowhere in the Plan, including Section 5, Exclusion 10, is the term or phrase "company business" included.

140.    If Lincoln had wanted to require an aircraft be used for "company business" rather than be leased "by or on behalf of" the sponsor, Lincoln would have used such language in In Section 5, Exclusion 10 of the Plan or elsewhere in the Plan.

Lincoln knew, before or upon reading Mueller's March 14, 2023 appeal, that its policy did not require the aircraft to be used for "company business" as stated in its denial letter dated February 15, 2023.

141.    On February 15, 2023 Lincoln acknowledged that Kenneth Muller "was an employee of Raley's and obtained a pilot's license to assist operations with his employer."

142.    On February 15, 2023 Lincoln acknowledged that use of the Baron was "sponsored by the employer."

143.    Lincoln's denial letter of February 15, 2023 stated:

"The affidavit provided by Teresa Conte of R&T Aviation, LLC, indicated on September 4, 2022, Mr. Conte and Mr. Mueller took a Baron (aircraft) for a flight. The aircraft crashed and they were both fatally injured. If they had returned the aircraft, the charges would have been billed to Raley's. She included other invoices sent to Raley's dated August 23, 25, 28 and September 3, 2022."

144.    Lincoln's denial letter dated February 15, 2023 also stated:

We conducted a thorough and independent review of the entire claim. Based on the facts of the case and the terms of the Policy, we have determined accidental death benefits are not payable. We acknowledge that Mr. Mueller was an employee of Raley's and obtained a pilot's license to assist operations with his employer, however Mr. Mueller was not considered a passenger on the plane at the time of his death.

Your statement that Mr. Mueller was a passenger on [sic] plane sponsored by the employer was considered however the information provided indicated Mr. Mueller was considered a pilot in the National Transportation Safety Board Aviation Accident Preliminary Report.

According to Macmillan Dictionary, a passenger is defined as "Some-one who travels in a motor vehicle, aircraft, train, or ship but is not the driver or one of the people who works on it." Additionally, the Oxford Languages Dictionary defines 'passenger' as a: a traveler on a public or private conveyance other than the driver, pilot, or crew.

Per the National Transportation Safety Board Aviation Accident Preliminary Report, *the flight instructor and pilot receiving instruction* were fatally injured. The airplane was operated as a Title 14, Code of Federal Regulations Part 91 instructional flight.

The report listed two fatal crew injuries and no passengers. The affidavits suggest Mr. Mueller was learning to fly the plane and was flying with a flight instructor to gain experience; therefore, he was not considered a passenger. Additionally, the employer confirmed he was not traveling for business purposes.

In reviewing the available information, Mr. Mueller was not considered a passenger, he was flying the plane with a flight instructor, and was not flying for business purposes. We disagree that Mr. Mueller was a passenger on the aircraft that crashed regardless of whether he was legally allowed to pilot the plane and/or the plane was owned or leased on behalf of the Sponsor.

Under the Policy, accidental death benefits are not payable for any loss that is contributed to or caused by: boarding, leaving or being in or on any kind of aircraft. Mr. Mueller was on an aircraft. The exclusion would not apply only if he were a fare paying passenger on a commercial flight (which he was not) or traveling as a passenger in any aircraft that is owned or leased by or on behalf of the Sponsor. In this case, the evidence indicated Mr. Mueller was not considered a passenger in the aircraft as is defined by the Policy. As such, accidental death benefits are not payable under the Policy."

145.    The review of Mueller's appeal was processed and decided upon by one or more employees of Lincoln.

146.    Lincoln's second denial dated February 15, 2023 stated that "Mr. Mueller was not considered a passenger in the aircraft as it is defined by the Policy."

147.    Lincoln's statement in its February 15, 2023 denial letter that "Mr. Mueller was not considered a passenger in the aircraft as it is defined by the Policy" was false and misleading.

148.    Section 5, Exclusion 10 of the Plan does not define the term or word "passenger" as represented by Lincoln in its denial letter dated February 15, 2023.

149.    Regarding the ADD benefit requested by Mueller the word or term "passenger" is not defined.

150.    On March 14, 2023 Mueller timely appealed Lincoln's denial of benefits dated February 15, 2023.

151.    Lincoln knew, before or upon reading the March 14, 2023 appeal, that it had used the word or term "passenger" differently in regard to the "Common Carrier" and

"Disappearance" benefits set out in Section 4 than it had when using the word "passenger" in Section 5, Exclusion 10.

152.    Lincoln knew, before or upon reading the March 14, 2023 appeal, that based on the presumption of consistent usage when there is a change in the terminology within the same document a change in meaning is intended.

153.    Lincoln knew, before or upon reading the March 14, 2023 appeal, that when reading the contract (Plan) as a whole, Lincoln intended the word "passenger" to be "an individual other than a pilot, operator or crew member" in regard to Additional Benefits for loss occurring by Common Carrier and Disappearance as expressly defined in Section 4 but in Section 5, Exclusion 10 the word "passenger" was not defined to exclude a pilot, operator or crew member.

154.    The Plan's use of the word or term "passenger" in Section 5, Exclusion 10 is different than how the word "passenger" is used in Section 4 of the Plan.

155.    The difference in Plan's use of the word or term "passenger" in Section 4 and 5, Exclusion 10 is ambiguous when the contract is viewed in the whole.

156.    The use of the word or term "passenger" is ambiguous based in its common usage. In some definitions a pilot is excluded from being a passenger and on other definitions a pilot is not excluded from being a passenger.

157.    Lincoln knew, before or upon reading the March 14, 2023 appeal, that when there was an ambiguity or uncertainty in the insurance policy the ambiguity or uncertainty must be resolved against the insurer.

158.    Lincoln knew before denying the claim on February 15, 2023 that "contra proferentem" is a rule of contract interpretation that states an ambiguous contract term must be construed against the drafter of the contract.

159.    Lincoln knew, before or upon reading the March 14, 2023 appeal, that if an insurer uses language which is uncertain any reasonable doubt will be resolved against the insurer.

160.    Lincoln knew, before or upon reading the March 14, 2023 appeal, that the policy did not define "passenger" in the context of the claim asserted by Mueller.

161.    Lincoln knew, before or upon reading the March 14, 2023 appeal, that even if Kenneth Mueller had been a pilot or a student pilot in the Baron on September 4, 2023 that Kenneth Mueller had just completed flight training on July 21, 2022, 45 days before the crash.

162.    Lincoln knew, before or upon reading the March 14, 2023 appeal, that since Kenneth Mueller had just completed flight training on July 21, 2022, 45 days before the crash that it was not reasonable to conclude Kenneth Muller was in any way piloting the Baron as it was falling out of control toward the ground.

163.    Lincoln knew, before or upon reading the March 14, 2023 appeal, that even if Kenneth Mueller had been a pilot or a student pilot in the Baron on September 4, 2023 that because Kenneth Mueller had just completed flight training on July 21, 2022, 45 days before the crash it was not reasonable to conclude Kenneth Muller was in any way piloting the Baron at the time the Baron impacted the ground.

164.    Lincoln knew, before or upon reading the March 14, 2023 appeal, that in the context of the benefit claimed, Kenneth. Mueller could not lawfully be a pilot of the twin-engine Baron.

165.    Lincoln knew, before or upon reading the March 14, 2023 appeal, that Kenneth Mueller was not rated or qualified to pilot the twin-engine Baron.

166.    Lincoln knew, before or upon reading the March 14, 2023 appeal, that insurance coverage is interpreted broadly so as to afford the greatest possible protection to the insured.

167.    Lincoln knew, before or upon reading the March 14, 2023 appeal, that exclusionary clauses are interpreted narrowly against the insurer and in favor of coverage.

168.    Lincoln knew before denying Mueller's claim that it must give the "specific reason or reasons" for the denial of benefits. (29 USC § 1133(1) and C.F. R. § 2560-503-1(g)(1).

## LINCOLN'S THIRD  DENIAL OF THE ADD BENEFIT, MARCH 30, 2023

169.    Mueller's appeal of March 14, 2023 was reviewed by one or more employees of Lincoln.

170.    Lincoln's decision to deny Mueller's March 14, 2023 appeal was decided on by one or more employees of Lincoln.

171.    On March 30, 2023 Lincoln again denied Mueller's request for payment of the ADD benefit.

172.    Lincoln knew that before denying Mueller's claim that definitions and case law existed that did not exclude a pilot from being a "passenger."

173.    At no time did Mueller claim Kenneth Mueller was on a commercial aircraft or that he was a fare paying passenger.

174.    When denying payment of the ADD claim by letter dated March 30, 2023, Lincoln relied on Section 5, Exclusion 10.

175.    On March 30, 2023, when denying Mueller's request for ADD benefits Lincoln stated:

> "It remains that in The National Transportation Safety Board Aviation Accident Preliminary Report submitted for consideration, it identified two fatal crew injuries, not fatal passenger injuries."

176.    At no time has Mueller alleged Raley's owned the Baron.

177.    In the context of the policy, "lease" and "use" of aircraft have synonymous meanings.

178.    On March 30, 2023, when denying Mueller's request for ADD benefits, Lincoln acknowledged that R&T Aviation, who managed the lease of the aircraft would have billed Raley's for the lease or use of the aircraft had it not crashed and been returned after use.

179.   Based on the affidavit of Teresa Conte aka Teri Conte, Lincoln could have reasonably concluded that the Baron was being used "by or on behalf of" Raley's at the time of the crash.

180.   On March 30, 2023, when denying Mueller's request for ADD benefits, Lincoln wrote in its denial letter:

> "The Policy states Accidental Death benefits are not payable for any loss that is contributed to or caused by: boarding, leaving or being in or on any kind of aircraft. However, this exclusion will not apply if the Covered Person is a fare paying passenger on a commercial aircraft or traveling as a passenger in any aircraft that is owned or leased by or on behalf of the Sponsor. We agree with the prior determination that Mr. Mueller was not a fare paying passenger on a commercial aircraft, nor traveling as a passenger on an aircraft owned or leased by or on behalf of the Sponsor, based on the evidence submitted.
> …
> At this time, the appeal process has been exhausted and no further review will be conducted by Lincoln. You may request to receive, free of charge, copies of all documents relevant to this claim.
> You have the right to bring a civil action under section 502(a) of ERISA following an adverse benefit determination on review."

## LINCOLN'S RESPONSE TO CALIFORNIA DEPARTMENT OF INSURANCE, MAY 1, 2023

181.   On May 1, 2023, Lincoln responded to the California Department of Insurance regarding Mueller's claim for ADD benefits.

182.   Lincoln's May 1, 2023 letter states:

> "Our position remains that Kenneth Mueller's death was a result of a plane crash in which he was not a fare paying passenger on a commercial aircraft or travelling as a passenger in an aircraft owned or released [sic] on behalf of the sponsor. Specifically, the coroner reports states: The decedent was 56-year-old student pilot of an airplane that crashed. The National Transportation Safety Board Aviation references the flight instructor and pilot receiving instruction were fatally injured. Crew Injuries-2 Fatal. Passenger injuries N/A."

## B.   SECOND CLAIM – BREACH OF FIDUCIARY DUTIES

183.   Plaintiff incorporates the allegations in the previous claim as though set forth in full in this claim.

## LINCOLN HAD A CONFLICT OF INTEREST IN DENYING MUELLER'S CLAIM

184.    The Plan states:

>   "Lincoln shall possess the authority, in its sole discretion, to construe the terms of this plan and to determine benefit eligibility hereunder. Lincoln's decisions regarding construction of the terms of this plan and benefit eligibility shall be conclusive and binding." (ADD0047)

185.    Lincoln had discretionary authority in determining when claims are payable.

186.    Lincoln knew before denying Mueller's claim that if Mueller appealed Lincoln's denial of benefits that Lincoln would conduct the appeal of its own decision to deny benefits.

187.    Lincoln wrote the Plan, investigated any claim for benefits, determined if benefits would be paid, decided any appeal of a decision not to pay benefits, and if benefits were paid, Lincoln would use its own funds to pay the benefits.

188.    The funding arrangement of the insured Plan means that if benefits are paid the source of the funds used to pay a benefit is from Lincoln's coffers. (ADD0052)

189.    Lincoln had a monetary conflict of interest in investigating Mueller's ADD claim and the appeals of its decision not to pay the ADD claim.

190.    Lincoln owed a fiduciary duty to Mueller not to act when it had an actual or apparent conflict of interest.

191.    When Lincoln evaluated Mueller's claims for benefits Lincoln had a conflict-of-interest.

192.    In evaluating Mueller's claim, Lincoln emphasized evidence favoring denial of payment of Mueller's ADD claim and de-emphasized evidence favorable to the payment of the requested ADD benefit.

193.    Lincoln knew on or before March 14, 2023 that ERISA legislation must be liberally construed in favor of protecting participants and that the Plan should be read broadly in favor of coverage. (*Batchelor v. Oak Hill Med. Grp.*, 870 F.2d 1446 (9th Cir. 1989).)

194.    Lincoln provided inconsistent explanations or reasons for its denial of the payment of the ADD benefit.

195.    Some of the explanations or reasons Lincoln gave for denial of the ADD claim were not based on policy language. (For example, Lincoln stated the benefit was not payable because death was caused while Kenneth Mueller was a "student pilot," Kenneth Mueller was a "pilot," the aircraft was not being used for "business purposes," that a media report stated that the aircraft was not being used for "company business," and Kenneth Mueller was not a "passenger" as "defined in the policy.")

196.    Lincoln, in exercising duties under the Plan, was required to act in accordance with common law trust principles. (*Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 111 (1989).)

197.    On or before March 14, 2023 Lincoln knew it had acted with an actual or apparent conflict of interest in deciding the appeals from Mueller.

198.    On or before March 14, 2023, Lincoln knew it had an obligation to avoid the "appearance of impropriety" when evaluating whether to pay a Plan benefit and when deciding appeals.

199.    Lincoln knew before receiving the claim for ADD benefits that an apparent conflict of interest existed when it funded and provided "Insurer Administration" of the Plan. (*Nord v. Black & Decker Disability Plan*, 356 F.3d 1008, 1010 (9th Cir. 2004), on remand from 538 U.S. 822 (2004).

200.    Lincoln abused its discretion in its handling of Mueller's claim for ADD benefits.

201.    Lincoln acted with a conflict of interest in that it provided "Insurer Administration" of the Plan, interpreted Plan words and terms, determined whether a benefit is payable under the Plan, and paid Plan benefits out of its own pocket. (*Metro Life Ins. Co. v. Glenn,* 554 U.S.

1    105, 108 (2008), *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955 (9th Cir., en banc

2    2006).)

3    202.    Lincoln acted in bad faith in asserting non-contractual provisions as a basis for denying

4    benefits.

5    203.    Lincoln acted in bad faith by de-emphasizing evidence favorable to paying the ADD

6    claim and emphasizing information favorable to non-payment or denial of the claim.

7

8    **LINCOLN OWED FIDUCIARY DUTIES TO MUELLER**

9    204.    A "fiduciary" within ERISA's usage is, in part, one who "exercises any authority or

10    control regarding management or disposition of the plan's assets." (29 U.S.C. §

11    1002(21)(A).)

12    205.    Regarding the claim presented by Mueller, Lincoln was a "functional fiduciary."

13

14    206.    A "functional fiduciary" under ERISA is a person or entity who exercises discretionary

15    control over the management or administration of ERISA plan. (Employee Retirement

16    Income Security Act of 1974 § 3, 29 U.S.C.A. § 1002(21)(A), *Bafford v. Northrop*

17    *Grumman Corp.*, 994 F.3d 1020 (9th Cir. 2021).)

18    207.    Lincoln provided "Insurer Administration" of the Plan and is a fiduciary under ERISA.

19    (29 U.S.C. §1002(21)(A)(i), (iii). *Baford v. Northrop Grumman Corp.*, 994 F.3d 1020,

20    1025 (9th Cir. 2021).

21

22    208.    29 U.S.C. § 1104(a)(l)(B) required Lincoln, as a fiduciary to act "with the care, skill,

23    prudence, and diligence under the circumstances then prevailing that a prudent man

24    acting in a like capacity and familiar with such matters would use in the conduct of an

25    enterprise of a like character and with like aims."

26    209.    Under ERISA 29 CFR § 2550.404(a)(1), a fiduciary is to discharge their duties regarding

27    a plan solely in the interest of the participants and beneficiaries and for the exclusive

28    purpose of providing benefits to participants and their beneficiaries.

210.    If Lincoln, as the one that decided if Plan benefits were payable, believed that more information was needed to make a reasoned decision, it would have asked for it before denying the claim. (*Booton v. Lockheed Med. Benefit Plan*, 110 F.3d 1461, 1463 (9th Cir. 1997).)

211.    Lincoln knew before receiving Mueller's claim for ADD benefits that its interpretation of the Plan must comport with the reasonable expectations of Mueller. (*Saltarelli v. Bob Baker Grp. Med. Trust*, 35 F.3d 382, 386-87 (9th Cir. 1994).)

212.    Lincoln owed Mueller fiduciary duties in deciding her claim for ADD benefits.

213.    Lincoln owed Mueller fiduciary duties in deciding the appeals presented by Mueller.

214.    At all relevant times Lincoln provided incentives to those individuals who investigated, processed, and denied Mueller's claim for ADD benefits.

215.    At all relevant times Lincoln provided incentives to those individuals who supervised the individuals who denied Mueller's claim including those who denied the claim after receiving Mueller's appeals.

216.    The incentives provided to Lincoln's employees tainted Lincoln's fiduciary duties causing analysis and determinations and coverage to be skewed in favor of Lincoln and against the claimant.

217.    Lincoln conducted periodic performance reviews of the individuals who were involved in the decisions to deny benefits to Mueller. Those periodic performance reviews, however named, evidence a bias in favor of Lincoln and against payment of benefits.

218.    Lincoln conducted periodic performance reviews of individuals who supervised those involved in the decisions to deny benefits to Mueller. Those periodic performance reviews, however named, evidence a bias in favor of Lincoln and against payment of benefits.

219.     Lincoln has a claim handling manual, however actually named, that is used for training of those who denied and supervised those who denied Mueller's claim.

220.     Lincoln's claim handling manual, however actually named details how Lincoln intended claims such as Mueller's claim should be investigated and determined.

221.     Lincoln's claim manual, however actually named evidences the standards Lincoln intends to be used when processing claims for benefits such as the claim presented by Mueller.

222.     Lincoln's claim handling manual, however actually named, was available to and was periodically used by the individuals who supervised those individuals who decided to deny Mueller's claim.

223.     Lincoln's claim manual, however actually named, shows how Lincoln did not process Mueller's claim as intended by the manual.

224.     The inconsistency between how Lincoln intended a claim for ADD benefits to be processed and how Lincoln processed Mueller's claim for ADD benefits shows Lincoln failed to follow its own standards in processing ADD claims.

225.     Lincoln has a claim file, however actually named, which reflects all activity and process related to Mueller's claim for ADD benefits.

226.     Lincoln's claim file, however actually named, reflects an intent or bias to deny Mueller's claim.

227.     At all relevant times, Lincoln was to construe the language in the Plan in its most inclusive sense, for the benefit of Mueller.

228.     Lincoln failed to construe Plan terms in their most inclusive sense for the benefit of Mueller.

229.     Lincoln had the duty not to mislead Mueller regarding Plan terms or requirements.

230.     Lincoln breached its fiduciary duty to Mueller by:

    a.   Misrepresenting the terms of the Plan;

24

b. Interpreting undefined terms which could favor coverage or denial of coverage in a manner favorable to Lincoln;

c. Construing ambiguities in favor of Lincoln and against Mueller;

d. Emphasizing facts in favor of denial of benefits;

e. Deemphasizing facts in favor of paying the ADD benefit;

f. Acting with a conflict of interest in deciding not to pay Mueller the ADD benefit;

g. Failing to interpret Plan terms in their most inclusive manner so that the ADD benefit would be paid to Mueller;

h. Failing to liberally construe Plan terms in favor of protecting participants;

i. Concluding Kenneth Mueller was excluded from being a passenger on the Baron;

j. Concluding Kenneth Mueller was a student pilot on the Baron;

k. Deciding whether the ADD benefit requested by Mueller was payable when a conflict of interest existed;

l. Failing to broadly construe Plan term in favor of coverage; and

m. Failing to comport with the reasonable expectations of Mueller.

231. Lincoln breached fiduciary duties owed to Mueller.

232. Lincoln owed Mueller a duty of loyalty in the processing of her claim for ADD benefits.

233. As a direct and proximate result of Lincoln's conduct as alleged herein, Mueller has retained an attorney to represent her interests and has incurred costs and attorney fees.

## C. **RELIEF REQUESTED**

Plaintiff, BRIGITTE MUELLER, prays that this court consider the records pertaining to her claim for the ADD benefit, the law and find as follows:

1. The court has jurisdiction to adjudicate this controversy pursuant to 28 USC §1331;

2. The claims asserted by Mueller are governed by the Employee Retirement Security Act of 1974 (ERISA), a body of federal law;

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because significant events that give rise to these claims occurred in this district;

4. Plaintiff, Brigitte Mueller has standing to bring this action pursuant to 29 U.S.C. §1132;

5. Kenneth was a full-time active employee of Raley's at the time of his death;

6. Kenneth Mueller was the Senior Vice President and Chief Financial Officer of Raley's at the time of his death;

7. Brigitte Mueller is a beneficiary of the benefits which are the subject of this action;

8. Kenneth Muller obtained a pilot's license to assist operations with his employer;

9. Kenneth Mueller completed training to fly a single-engine aircraft in July 2022, approximately 45 days before he died in the crash of a twin-engine aircraft.

10. Kenneth Mueller was a passenger in a twin-engine aircraft that crashed on September 4, 2022, in Sacramento County, California;

11. Kenneth Mueller was not licensed to pilot the twin-engine aircraft that crashed on September 4, 2022;

12. Richard Conte was licensed to pilot the twin-engine aircraft that crashed on September 4, 2022;

13. Richard Conte was the pilot of the aircraft which crashed on September 4, 2002;

14. It is not relevant whether Kenneth Mueller was a pilot, student pilot or crew member at the time of the crash. While those terms would be relevant to certain Section 4 benefits, they however are not applicable to the benefit claimed by Mueller  or the exclusion asserted by Lincoln, Section 5, Exclusion 10;

15. Kenneth Mueller's death was accidental;

16. Kenneth Mueller was occupying, at the time of his death a Baron aircraft which is commonly referred to as a six passenger aircraft;

17. The Baron was a twin-engine aircraft;

18. The Baron was being leased or used by or on behalf of Raley's at the time of the crash;

19. Lincoln drafted the Plan;

20. The Plan is a contract of adhesion;

21. Lincoln as the "Insurer Administrator" was the de facto administrator responsible to make interpretation of Plan language, decide whether to accept or deny a claim, and decide any appeal of its decision to deny a claim for Plan benefits;

22. If money was paid for a Plan benefit the source of the money was from Lincoln;

23. The Plan provided benefits for accidental death;

24. Brigitte Mueller made a claim for an ADD benefit;

25. The benefit claimed was for $900,000;

26. Lincoln used restrictive definitions regarding the term "passenger" in Section 4 of the Plan but did use the same restrictive definition when it used the word "passenger" In Section 5, Exclusion 10;

27. If Lincoln had intended the word "passenger" as used in Section 5 to have the same restrictive definition it used in Section 4 of the Plan it failed to do so;

28. The term "passenger" as used in Section 5 is ambiguous when the Plan's content is considered in its entirety. (*Armistead v. Vernitron Corp.,* 944 F.2d 1287, 1293 (6th Cir.1991).);

29. The term passenger as used in the Plan is ambiguous given its common usage;

30. The word or term "passenger" must be understood in its most inclusive sense;

31. When considering the Plan in its entirety, the term "passenger" as used in Section 5, Exclusion 10 is broad enough to encompass a pilot, operator, or crew member;

32. When interpreting the Plan as a whole, and interpreting the term "passenger" in its broadest sense, Kenneth Mueller was a passenger in the Baron that crashed on September 4, 2022;

33. Lincoln misrepresented to Mueller in its February 15, 2023 denial letter that "Mr. Mueller was not considered a passenger in the aircraft as it is defined by the Policy." The pertinent portion of

the Plan does not define the term "passenger" as represented by Lincoln in its February 15, 2023 denial letter.

34. The Plan did not define the word or term "lease" as used in Section 5, Exclusion 10;

35. The word or term "lease" must be understood in its most inclusive sense;

36. The undefined word "lease" as used in the context of the Plan is broad enough mean "use;"

37. The phrase "by or on behalf of" was not defined in the Plan;

38. The Plan's use of the phrase "leased by or on behalf of" as used in Section 5, Exclusion 10 when applied to the context of aircraft may reasonably include an aircraft "used by or on behalf of" teh Sponsor;

39. The cost of using the aircraft on the date of crash, September 4, 2022 would have been charged to Raley's, the Plan Sponsor, if it had not crashed;

40. The Baron was being used by or on behalf of Raley's at the time of its crash;

41. Lincoln had the discretion to construe the terms of the plan and to determine benefit eligibility;

42. Lincoln drafted the Plan;

43. Lincoln interpreted language in the Plan

44. Lincoln decided whether claims made for Plan benefits should be paid;

45. Lincoln did not conduct an independent review of the appeals presented by Mueller;

46. Lincoln decided any appeal by a claimant of a decision to deny payment;

47. Each decision not to pay benefits and each decision appealing a determination not to pay was decided by an employee of Lincoln;

48. If a Plan benefit was paid Lincoln would pay benefits from its own funds

49. Lincoln had a conflict between its interests and the interests of Mueller when it was deciding whether to pay Plan benefits;

50. Lincoln had a financial conflict of interest in that if a benefit was paid it would be paid from funds belonging to Lincoln;

51. Lincoln provided inconsistent explanations or reasons for its denial of the payment of the ADD benefit. Some of the explanations or reasons Lincoln gave for denial of the ADD claim were not based on policy language. (For example, Lincoln stated the benefit was not payable because Kenneth Mueller was a "student pilot," Kenneth Mueller was a "pilot," the aircraft was not being used for "business purposes,", that  and Kenneth Mueller was not a "passenger" as "defined in the policy.");

52. Lincoln was functional fiduciary of the Plan;

53. Lincoln owed a fiduciary duty to Mueller;

54. Lincoln was required to act in accordance with common law trust principles when evaluating Mueller's claim;

55. ERISA 29 CFR § 2550.404(a)(1) required a fiduciary to discharge their duties regarding a plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and their beneficiaries;

56. There was a reasonable basis to conclude that Kenneth Mueller was a passenger at the time of the crash;

57. There was a reasonable basis to conclude that the Baron had been leased by or on behalf of Raley's on September 4, 2022;

58. Lincoln had a duty to make interpretations of facts in good faith and in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and their beneficiaries;

59. Lincoln de-emphasized facts that supported payment of the ADD benefit and emphasized facts that supported non-payment;

60. Lincoln asserted reasons for denial of the ADD benefit that were not a basis for payment or denial of the benefit as set forth in the Plan;

61. Lincoln acted in bad faith in asserting non-contractual provisions as a basis for denying benefits and in acting with a conflict of interest; and

62. Lincoln breached its fiduciary duties in its handling of Mueller's claim.

**Plaintiff, Brigitte Mueller also prays:**

63. This court declare the benefits requested by Mueller satisfy Plan requirements for their payment;

64. This find that the ADD benefit requested by Mueller are due and payable;

65. Mueller be granted leave to amend the Complaint if facts are revealed justifying amendment;

66. Mueller be awarded costs as allowed applicable ERISA law;

67. Mueller be awarded attorney fees as allowed by applicable law, including 29 U.S.C. § 1132(g)(1) (*Hardt v. Reliance Standard Ins. Co*., 130 S. Ct. 2149, 2158 (2010);

68. Mueller be awarded prejudgment interest pursuant to 28 U.S.C. § 1961; and

69. This court will provide such further relief as it deems just and proper.

DATED:  5/16/2023

CRAIG SMITH, ESQ.
Coulter Harsh Law
403 Hill Street
Reno, Nevada 89501
Attorney for Plaintiff, BRIGITTE MUELLER