1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10                         ----oo0oo----

11

12    BRIGITTE MUELLER,                  No. 2:23-cv-00919 WBS JDP

13              Plaintiff,

14        v.                             MEMORANDUM OF DECISION

15    THE LINCOLN NATIONAL LIFE
      INSURANCE COMPANY,
16
              Defendant.
17

18                         ----oo0oo----

19
           Plaintiff Brigitte Mueller brought this action against
20
      defendant Lincoln National Life Insurance Company alleging that
21
      defendant violated the Employee Retirement Income Security Act
22
      ("ERISA"), 29 U.S.C. § 1132(a), when it failed to pay accidental
23
      death benefits following the death of plaintiff's husband.
24
           On January 23, 2024, the court held a hearing pursuant
25
      to Kearney v. Standard Insurance Co., 175 F.3d 1084, 1089 (9th
26
      Cir. 1999) (en banc).  The following memorandum constitutes the
27
      court's findings of fact and conclusions of law pursuant to
28
                                  1

1  Federal Rule of Civil Procedure 52(a).

2  I.    Factual and Procedural Background

3          Kenneth Mueller was employed as the Chief Financial

4  Officer of Raley's, a supermarket chain.  (See Admin. Record

5  ("Record") (Docket No. 25-1) at 109, 160.)  As part of his

6  employment, he (and other Raley's executives) traveled by private

7  plane to various Raley's store locations.  (Id.)  Raley's

8  encouraged Mr. Mueller to receive his pilot's license and paid

9  for Mr. Mueller to receive flying lessons.  (See id. at 109-10,

10  160, 223.)

11         On September 4, 2022, Richard Conte (Raley's Chief

12  Pilot) and Mr. Mueller were flying in a private twin-engine

13  aircraft.  (See id. at 109, 160.)  Though Mr. Mueller had

14  acquired his pilot's license by this time, he was not yet

15  qualified to fly this type of aircraft and was with Mr. Conte for

16  the purpose of learning to fly the aircraft.  (See id. at 110,

17  128, 160.)  The aircraft crashed and both Mr. Mueller and Mr.

18  Conte suffered fatal injuries.  (See id. at 110, 122, 128-30,

19  160.)  The National Transportation Safety Board investigated the

20  incident and found that both the "flight instructor and pilot

21  receiving instruction were fatally injured," noting that the

22  crash involved two "crew" injuries and zero "passenger" injuries.

23  (Id. at 128.)

24         The aircraft involved in the accident was managed by R

25  & T Aviation, LLC.  (Id. at 107.)  Mr. Conte routinely provided

26  aircraft management services to Raley's under the auspices of R &

27  T Aviation.  (See id. at 107, 109.)  For previous flights taken

28  for educational purposes by Mr. Mueller and Mr. Conte, Raley's

1   had reimbursed R & T Aviation for the fuel costs.  (See id. at

2   107, 155-57.)  R & T Aviation planned to bill Raley's for the

3   fuel used on September 4, 2022, and would have done so had the

4   plane not crashed.  (See id. at 107.)

5        Plaintiff sought accidental death benefits pursuant to

6   Raley's employee life insurance policy, which was funded and

7   administered by defendant Lincoln National Insurance Company (see

8   id. at 167, 227, 423, 451-53) and governed by ERISA, 29 U.S.C. §§

9   1001 et seq.

10        Defendant denied benefits, stating that Mr. Mueller was

11   a student pilot and therefore fell under the policy's aircraft

12   exclusion.  (See Record at 93-95.)  Plaintiff pursed two appeals

13   of the decision through defendant's appeal department, both of

14   which were unsuccessful.  (See id. at 25-30, 97-101, 233.)

15   II.  Standard of Review

16        ERISA allows a participant or beneficiary to bring a

17   civil action to recover plan benefits.  29 U.S.C. §

18   1132(a)(1)(B); Metro. Life Ins. Co. v. Glenn, 554 U.S. 105, 108

19   (2008).  In ERISA actions challenging denials of benefits under

20   29 U.S.C. § 1132(a)(1)(B), "[d]e novo is the default standard of

21   review." Abatie v. Alta Health & Life Ins. Co., 458 F.3d 955,

22   963 (9th Cir. 2006) (en banc) (internal citations omitted); see

23   also Kearney, 175 F.3d at 1089.

24        The parties agree that de novo review limited to the

25   existing administrative record is appropriate here.  See Kearney,

26   175 F.3d at 1089-90.  "De novo review can best be understood as

27   essentially a bench trial 'on the papers' with the District Court

28   acting as the finder of fact."  Zelhofer v. Metro. Life Ins. Co.,

3

1  No. 2:16-cv-00773 TLN AC, 2022 WL 525562, at *11 (E.D. Cal. Feb.

2  22, 2022) (internal quotation marks omitted); see also Kearney,

3  175 F.3d at 1094.  When review is de novo, "the court does not

4  give deference to the claim administrator's decision, but rather

5  determines in the first instance" if the claimant has "adequately

6  established" that she is entitled to benefits "under the terms of

7  the plan."  See Muniz v. Amec Constr. Mgmt. Inc., 623 F.3d 1290,

8  1295-96 (9th Cir. 2010).

9  III. Discussion

10       At issue here is the application of an exception to the

11  policy's aircraft exclusion.

12       The aircraft exclusion provides: "No benefits are

13  payable for any loss that is contributed to or caused by . . .

14  boarding, leaving or being in or on any kind of aircraft."

15  (Raley's Group Life Insurance Policy ("Policy") (Docket No. 25-2)

16  at AEX-1.)

17       The exception to the aircraft exclusion provides:

18  "[T]his exclusion will not apply if the Covered Person is [1] a

19  fare paying passenger on a commercial aircraft or [2] traveling

20  as a passenger in any aircraft that is owned or leased by or on

21  behalf of the Sponsor."  (Id. (emphasis added).)

22       Plaintiff argues that decedent falls under the second

23  clause of the exception.  Thus, plaintiff must establish both

24  that decedent was a passenger, and that the aircraft was owned or

25  leased by or on behalf of Raley's.

26       In determining whether a plaintiff is entitled to

27  coverage under ERISA, the Ninth Circuit "has generally applied

28  federal common law to questions of insurance policy

4

interpretation." <u>Dowdy v. Metro. Life Ins. Co.</u>, 890 F.3d 802, 807 (9th Cir. 2018) (citing <u>Padfield v. AIG Life Ins. Co.</u>, 290 F.3d 1121, 1125 (9th Cir. 2002)).  However, courts may also "borrow from state law where appropriate" and look to "the interests served by ERISA's regulatory scheme." <u>Id.</u> at 807-08 (internal quotation marks omitted).  "[I]t is 'the policy of [ERISA] to protect . . . the interests of participants in employee benefit plans and their beneficiaries' and to 'increase the likelihood that participants and beneficiaries . . . receive their full benefits.'"  <u>Id.</u> at 808 (quoting 29 U.S.C. §§ 1001(b), 1001b(c)(3)).

The terms of an ERISA plan "should be interpreted 'in an ordinary and popular sense as would a [person] of average intelligence and experience.'" <u>McDaniel v. Chevron Corp.</u>, 203 F.3d 1099, 1110 (9th Cir. 2000) (quoting <u>Richardson v. Pension Plan of Bethlehem Steel Corp.</u>, 112 F.3d 982, 985 (9th Cir. 1997)) (alteration in original).  "'When disputes arise, courts should first look to explicit language of the agreement to determine, if possible, the clear intent of the parties.'" <u>Gilliam v. Nevada Power Co.</u>, 488 F.3d 1189, 1194 (9th Cir. 2007) (quoting <u>Richardson</u>, 112 F.3d at 985).  "The intended meaning of even the most explicit language can, of course, only be understood in the light of the context that gave rise to its inclusion." <u>Id.</u> (internal quotation marks omitted).

Coverage exclusions must be interpreted narrowly, <u>Dowdy</u>, 890 F.3d at 810, while "exceptions to exclusions are broadly construed in favor of the insured," <u>E.M.M.I. Inc. v. Zurich Am. Ins. Co.</u>, 32 Cal. 4th 465, 471 (2004).

1    The insured has the burden of proving that an exception

2 to an exclusion applies.  See Aydin Corp. v. First State Ins.

3 Co., 18 Cal. 4th 1183, 1190-92 (1998), as modified on denial of

4 reh'g (Oct. 14, 1998) (under California law, burden is on the

5 insured to prove applicability of exception to exclusion);

6 Aeroquip Corp. v. Aetna Cas. & Sur. Co., 26 F.3d 893, 894 (9th

7 Cir. 1994) (same); Williams v. Standard Ins. Co., No. 1:15-cv-

8 00416 DAD EPG, 2017 WL 1398819, at *14 (E.D. Cal. Apr. 19, 2017);

9 (placing burden on insured to prove applicability of exception to

10 exclusion in ERISA case).

11    A.    Decedent was a "passenger" under the plan.

12    Defendant argues that the court should interpret the

13 term "passenger" to exclude student pilots like decedent.  This

14 interpretation appears to comport with the standard dictionary

15 definition of the term.  See Passenger (n.), Oxford English

16 Dictionary Online (Dec. 2023),

17 https://doi.org/10.1093/OED/1150981152 (defining "passenger" as

18 "[a] person in or on a conveyance other than its driver, pilot,

19 or crew").

20    However, another possible interpretation of "passenger"

21 refers to every individual in a particular vehicle or aircraft.

22 As plaintiff points out, aircraft and vehicles are often referred

23 to by the number of passengers they carry in a manner that

24 includes all occupants, including the driver or pilot.  See

25 Prudential Ins. Co. of Am. v. Barnes, 285 F.2d 299, 300-01 (9th

26 Cir. 1960) ("in common parlance the term 'passenger' is often

27 used broadly" such that "on[e] finds references to 'six-

28 passenger' cars and 'four-passenger' planes"); Cont'l Cas. Co. v.

6

Warren, 152 Tex. 164, 169 (1953) ("the mere word 'passenger' cannot be said to exclude the pilot" because "common parlance undoubtedly uses it at times in the sense of 'occupant' of a private vehicle, as in the familiar expression 'a six-passenger automobile'").  Further, "[w]hile the term pilot traditionally signifies the person at the controls of an airplane, 'such definition is not mutually exclusive' with a broader definition of 'passenger' that includes all people within an aircraft." Cal. Ins. Guar. Ass'n v. Petrisevac, No. D038620, 2002 WL 32638, at *3 (Cal. Ct. App. Jan. 11, 2002) (quoting N. Am. Specialty Ins. Co. v. Foth, 861 F. Supp. 709, 712 (N.D. Ill. 1994)); see also Asher v. Battelle Mem'l Inst., No. 2:15-cv-1097, 2016 WL 5661695, at *5 (S.D. Ohio Sept. 30, 2016) (a pilot could be a passenger under insurance policy because policy contained "no language . . . which would preclude broadly interpreting the word 'passenger' as meaning any person, including a person acting as a pilot or crew member, who is traveling in . . . the aircraft").

Consistent with this possible interpretation, the court has identified numerous cases involving insurance policies that defined "passenger" to include all individuals within the plane, with some even explicitly including pilots and crew.  See, e.g., U.S. Aviation Underwriters, Inc. v. Fitchburg-Leominster, Flying Club, Inc., 42 F.3d 84, 85 (1st Cir. 1994) (involving insurance policy that defined "passenger" as "anyone who enters your aircraft to ride in or operate it"); Ranger Ins. Co. on Behalf of Bernstein v. Est. of Mijne, 991 F.2d 240, 243 (5th Cir. 1993) (pilot was a passenger under policy that defined "passenger" as "any person who is in the aircraft"); Littrall v. Indem. Ins. Co.

1  of N. Am., 300 F.2d 340, 344 (7th Cir. 1962) (involving insurance
2  policy that defined "passenger" as "any person or persons while
3  in the aircraft for the purpose of flight or attempted flight
4  therein"); Asher, 2016 WL 5661695, at *4 (pilot could be
5  considered a passenger under insurance policy that excluded
6  injuries resulting from "riding as a passenger in, entering, or
7  exiting any aircraft while acting or training as a pilot or crew
8  member"); Old Republic Ins. Co. v. San Antonio Piper, Inc., No.
9  CV SA-14-CA-002-FB, 2014 WL 12496572, at *2 (W.D. Tex. July 21,
10  2014) (pilot was a passenger under policy that defined
11  "passenger" as "any person, in, on or boarding the aircraft for
12  the purpose of riding or flying therein or alighting therefrom
13  after a flight or attempted flight therein, including pilot(s) or
14  crew member(s)").

15         Here, the insurance policy provides no definition of
16  "passenger" applicable to the exclusion at issue.  However,
17  examining the policy as a whole and construing the exception to
18  the aircraft exclusion broadly, as the court must, the court
19  concludes that a student pilot such as decedent qualifies as a
20  "passenger."

21         The court begins with the sentence at issue, which
22  reads: "[T]his exclusion will not apply if the Covered Person is
23  [1] a fare paying passenger on a commercial aircraft or [2]
24  traveling as a passenger in any aircraft that is owned or leased
25  by or on behalf of the Sponsor."  (Policy at AEX-1 (emphasis
26  added).)  The first clause modifies the word passenger with the
27  phrase "fare paying," thereby explicitly excluding crew members
28  and pilots, who do not pay fare.  In contrast, the second clause

contains no word or phrase that modifies "passenger."  If
defendant intended to limit the scope of "passenger" in the
second clause, it could have included such a limitation.  It did
not do so.

The court next looks to other uses of the term
"passenger" in the policy.  The policy contains a Disappearance
Benefit and Common Carrier Benefit, which both use the term
"Passenger."  Both provisions are appended by the following
definition: "With respect to this provision, 'Passenger' is
defined as an individual other than a pilot, operator or crew
member who is riding in or on, boarding, or dismounting from a
public conveyance."  (Policy at ADD-3.)

While this definition specifically excludes anyone
acting as a "pilot, operator or crew member," it only applies to
these specific provisions of the policy.  The Exclusions
provision, in contrast, is silent as to the definition of
"passenger."  Further, in the Disappearance and Common Carrier
provisions, "Passenger" is capitalized, indicating that the
specific given definition of the term applies.  The term is not
capitalized when used in the aircraft exclusion, suggesting that
a different definition applies.

If defendant wanted to exclude pilots and crew from the
meaning of "passenger" within the Exclusions section, it could
have, as it did in the Disappearance and Common Carrier
provisions.  In fact, the Exclusions section provides specific
definitions of other terms ("Participation" and "Riot") but fails
to provide any definition of the term "passenger."  From this
omission, the court concludes that defendant intended a different

1  sense of "passenger" -- namely, the broader meaning that includes
2  all individuals on the aircraft -- to apply.

3         Importantly, even if the court applied the definition
4  of passenger that appears in the Disappearance and Common Carrier
5  provisions, the aircraft exclusion would be ambiguous, as that
6  definition does not explicitly exclude "student pilots."
7  Foremost Insurance Co. v. Sheppard, 610 F.2d 551 (8th Cir. 1979),
8  is instructive.  There, the insurance policy at issue provided
9  coverage for "passengers," which it defined to exclude crew and
10 pilots.  Id. at 554.  "Crew" and "pilot" were defined as "any
11 person or persons involved in the operation of the aircraft while
12 in flight."  Id.  The Eighth Circuit held that the policy was
13 ambiguous as to whether student pilots were covered because the
14 policy did not explicitly include "student pilots" in its
15 definitions of "pilot" and "crew."  Id.  See also Castro v.
16 Fireman's Fund Am. Life Ins. Co., 206 Cal. App. 3d 1114, 1117
17 (1st Dist. 1988) (coverage exclusion of anyone who "dies as a
18 result of flying as a pilot or crew member of any aircraft" was
19 ambiguous as applied to a student pilot because it would be
20 reasonable to conclude that a student pilot is neither "pilot"
21 nor "crew").  This ambiguity would require the court to adopt the
22 interpretation favoring coverage, leading to the same result.
23 See Blankenship v. Liberty Life Assur. Co. of Bos., 486 F.3d 620,
24 625 (9th Cir. 2007) (if the court determines an ambiguity exists
25 "after applying the normal principles of contractual
26 construction," then "the interpretation that is most favorable to
27 the insured will be adopted").

28         One of defendant's stronger arguments pertains to the

10

1   purpose of aircraft exclusions in insurance policies.  It argues

2   that the purpose of such exclusions is "to insure most people who

3   fly but not those whose profession or hobby is connected with the

4   actual flying of planes and who are therefore normally subject to

5   more repeated risks and risks more directly within their own

6   control."  See Prudential Ins. Co., 285 F.2d at 300.  This

7   argument finds some support in the Exclusions provision, which

8   excludes from coverage deaths that are in some way the result of

9   the insured's choices or risky behavior, for example alcohol

10  usage, abuse of controlled substances, participation in a crime

11  or riot, self-inflicted injuries, military service, or extreme

12  sports.  (See Policy at AEX-1.)  However, in contrast to the

13  language from the Prudential case cited by defendant, decedent

14  was not engaged in flying as a "profession or hobby," but merely

15  incidentally to his employment.

16          It is plausible that the purpose of the aircraft

17  exclusion is as defendant contends; but if so, it was incumbent

18  upon defendant, as the drafter of the plan, to explicitly exclude

19  student pilots.  See E.M.M.I. Inc., 32 Cal. 4th at 471 ("the

20  burden rests upon the insurer to phrase exceptions and exclusions

21  in clear and unmistakable language").

22          The court therefore concludes that decedent qualified

23  as a "passenger" under the exception to the aircraft exclusion.

24      B.  Plaintiff has failed to satisfy her burden to show that
        the aircraft was "owned or leased by or on behalf of"
25      Raley's.

26          The analysis does not conclude with the court's finding

27  that decedent qualified as a "passenger" within the meaning of

28  the aircraft exclusion.  In order to qualify for the exception to

                                11

1   the aircraft exclusion, the decedent must also have been

2   traveling in an aircraft that was owned or leased by or on behalf

3   of Raley's.

4           There was no evidence, and plaintiff does not contend,

5   that the aircraft in which he was traveling at the time of the

6   accident was owned by Raley's.  To the contrary, although there

7   is no evidence of who owned it, the parties seem to assume it was

8   owned by someone else.  Defense counsel even suggested at the

9   time of oral argument that public records indicated it was owned

10  by a private attorney in Sacramento.  That fact, however, is not

11  part of the record, and the court does not consider it as proven.

12  The question thus becomes whether the aircraft was "leased" by or

13  on behalf of Raley's at the time of the accident.  Plaintiff

14  bears the burden of establishing that it was.  See Aydin, 18 Cal.

15  4th at 1190-92; Aeroquip, 26 F.3d at 894; Williams, 2017 WL

16  1398819, at *14.

17          Plaintiff argues that the court should construe

18  "leased" to mean "used," and that decedent was using the aircraft

19  on behalf of Raley's in learning to pilot it.  The court agrees

20  that decedent was using the aircraft on his employer's behalf.

21  (See Record at 107, 109-10, 155-57, 160, 223.)  However, the

22  court rejects plaintiff's unreasonably broad reading of the

23  policy that equates the term "leased" with "used."

24          Plaintiff cites authority indicating that a lease

25  conveys a right to possess and use property.  See, e.g., Lease,

26  Black's Law Dictionary (11th ed. 2019) ("lease" is defined as

27  "[a] contract by which a rightful possessor of [real or personal]

28  property conveys the right to use and occupy the property in

12

exchange for consideration"). Accepting that definition, no written contract or other document has been presented showing any agreement between the owner or rightful possessor of the aircraft and Raley's that even discusses the aircraft or the use of it. Nor has plaintiff made reference to any oral agreement regarding the use of that aircraft on the fatal day. A lease is the instrument or agreement whereby the right to use is conveyed. Plaintiff has not cited, nor has the court found, <u>any</u> authority indicating that the word "use" can reasonably be substituted for the term "lease."

When asked at oral argument, plaintiff could offer no potential explanation for the purpose of the language "owned or leased by or on behalf of the Sponsor" in the exception to the aircraft exclusion. Defendant argues that its purpose is to provide coverage to Raley's employees while flying in an aircraft for the benefit of Raley's. That does appear to be the logical purpose of this language, i.e., to require a connection between the decedent's presence in the aircraft and their employer's interests. See <u>Gilliam</u>, 488 F.3d at 1194 (in interpreting the plain language of an ERISA contract, courts look to "the context that gave rise to its inclusion"); <u>Dowdy</u>, 890 F.3d at 810 (looking to purpose of exclusion in analyzing its meaning).

The ownership or agreement underlying the use of the aircraft thus appears to have been relevant to the drafter of the policy. If mere usage was adequate, the policy could have so stated. Plaintiff has provided no argument grounded in the terms or purpose of the policy, nor has she cited to any on-point authority, that support the broad reading of the word "lease"

13

1    which she urges.

2              "A policy provision is ambiguous only if it is

3    susceptible to two or more reasonable constructions despite the

4    plain meaning of its terms within the context of the policy as a

5    whole."  Northrop Grumman Corp. v. Factory Mut. Ins. Co., 563

6    F.3d 777, 783 (9th Cir. 2009) (quoting Palmer v. Truck Ins.

7    Exch., 21 Cal. 4th 1109, 1115 (1999)); see also Blankenship, 486

8    F.3d at 625.  The word "lease" is not susceptible to plaintiff's

9    interpretation, which unreasonably strains the plain language of

10   the policy.  The court will not artificially create an ambiguity

11   where none exists.  See Evans v. Safeco Life Ins. Co., 916 F.2d

12   1437, 1441 (9th Cir. 1990) ("[i]f a reasonable interpretation

13   favors the insurer and any other interpretation would be

14   strained, no compulsion exists to torture or twist the language

15   of the policy" in plaintiff's favor).

16             The court therefore concludes that "leased" does not

17   mean "used" for purposes of the policy at issue and will

18   interpret "leased" according to its usual meaning.

19             There is no evidence whatsoever in the record

20   concerning who owned the plane or whether there was some

21   agreement concerning the use of the plane.  There is evidence

22   that Raley's planned to reimburse R & T Aviation for the

23   aircraft's fuel.  (See Record at 107.)  However, fuel

24   reimbursement alone is plainly inadequate to establish any sort

25   of ownership or lease, whether by Raley's, decedent, or someone

26   else.  By way of comparison, an employer might reimburse an

27   employee for fuel when the employee uses their personal car for

28   company business.  It would be absurd to conclude that the

1 │ employer therefore leased the employee's vehicle.

2 │         Plaintiff points out that decedent was the Chief

3 │ Financial Officer of Raley's and therefore authorized to act on

4 │ Raley's behalf, including by entering a lease agreement.  This

5 │ point is well taken; however, the mere fact that plaintiff used

6 │ the plane is still insufficient because the record gives no

7 │ indication that there was any agreement related to decedent's

8 │ use.  It is entirely possible, for example, that the owner of the

9 │ aircraft did <u>not</u> authorize Mr. Conte or Mr. Mueller to use the

10 │ aircraft for an instructional flight.

11 │         Because of the dearth of information in the record, the

12 │ court has no way of discerning the relevant facts.  Plaintiff had

13 │ the option of seeking to supplement the administrative record

14 │ once this action was initiated, <u>see Collier v. Lincoln Life</u>

15 │ <u>Assurance Co. of Bos.</u>, 53 F.4th 1180, 1186 (9th Cir. 2022), but

16 │ never availed herself of that option.  Had she done so, the court

17 │ likely would have granted that request because additional

18 │ information concerning the ownership or lease of the aircraft "is

19 │ necessary to conduct an adequate de novo review of the benefit

20 │ decision."  <u>See</u> <u>id.</u>

21 │         It was incumbent upon plaintiff to provide evidentiary

22 │ support for her contention that the aircraft was "owned or leased

23 │ by or on behalf of" Raley's.  Plaintiff has plainly failed to

24 │ meet that burden.  Plaintiff has therefore failed to establish

25 │ both elements required to qualify for the exception to the

26 │ aircraft exclusion.

27 │         IT IS THEREFORE ORDERED that Judgment be entered in

28 │ favor of defendant Lincoln National Life Insurance Company in

1  this action.

2  Dated:   January 25, 2024

   WILLIAM B. SHUBB
3  UNITED STATES DISTRICT JUDGE

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

16